1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

SABRINA Y.,

8
    Plaintiff,

9
    v.

10
COMMISSIONER OF SOCIAL SECURITY,

11
    Defendant.

12

CASE NO. C24-5377-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

13    Plaintiff appeals the denial of her application for Supplemental Security Income. She

14 contends the ALJ harmfully erred by (1) giving insufficient reasons for not adopting limitations

15 set forth by examining psychologists Dr. Terilee Wingate, Ph.D., and Dr. Melinda C. Losee,

16 Ph.D.; (2) improperly discounting plaintiff's testimony; and (3) failing to evaluate drug addiction

17 and alcohol ("DAA") properly. Dkt. 17. The Court **AFFIRMS** the Commissioner's final

18 decision and **DISMISSES** the case with prejudice.

19                                **BACKGROUND**

20    Plaintiff is currently 26 years old, studied to eleventh grade, and has no relevant work

21 experience. Tr. 86, 94. In March 2021, she applied for benefits, initially alleging disability as of

22 April 2016. Tr. 94. Her application was denied initially and on reconsideration. Tr. 94–101. In

23 March 2023, plaintiff amended her alleged onset date of disability to June 3, 2020, and the ALJ

conducted a hearing. Tr. 71–93, 258. The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date and that she has the severe impairments of bipolar disorder, post-traumatic stress disorder ("PTSD"), schizoaffective disorder, and borderline personality disorder. Tr. 51. After determinizing that these impairments did not meet or medically equal a listed impairment, the ALJ assessed that plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with non-exertional limitations: she can understand, remember, and carry out simple, routine, and repetitive tasks in a non-production-based system (non-assembly line work or work with production quotas); she can interact with co-workers and supervisors occasionally but should not work on teams or in tandem with others; and she cannot have any interaction with the general public. Tr. 52, 54. Considering plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 60. The ALJ therefore found plaintiff to be not disabled. Tr. 61. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–4.

## DISCUSSION

The Court will reverse the ALJ's decision only if it is not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Plaintiff has not demonstrated the ALJ's decision to discount the opinions of Drs.

Wingate and Losee, to discount plaintiff's symptom testimony, or to refer to plaintiff's drug use was unsupported by substantial evidence or the result of harmful legal error.

### 1. Medical Opinions of Drs. Wingate and Losee

Plaintiff contends that the ALJ improperly failed to adopt marked limitations to her capacity to work opined by examining psychologists Drs. Wingate and Losee. The ALJ considers the persuasiveness of medical opinions using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in the decision how persuasive he or she finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017).

> Supportability means the extent to which a medical source
> supports the medical opinion by explaining the "relevant ...
> objective medical evidence." *Id.* § 404.1520c(c)(1). Consistency
> means the extent to which a medical opinion is "consistent ... with
> the evidence from other medical sources and nonmedical sources
> in the claim." *Id.* § 404.1520c(c)(2).

*Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). The ALJ may, but is not required to, explain how he or she considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Nevertheless, an ALJ cannot reject a doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

Plaintiff sets forth an alternative interpretation of the medical opinion evidence. She has not, however, demonstrated that the ALJ's decision to discount the opinions of Drs. Wingate and

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 3

1   Losee was unreasonable, unsupported by substantial evidence, or harmfully erroneous as a

2   matter of law.

3           **a.  Dr. Wingate**

4        In an August 2021 psychological evaluation, Dr. Wingate opined that plaintiff has

5   marked limitations overall and in performing activities within a schedule, maintaining regular

6   attendance, and being punctual within customary tolerances without special supervision;

7   maintaining appropriate behavior in a work setting; and completing a normal work day and work

8   week without interruptions from psychologically based symptoms. Tr. 846. The ALJ found Dr.

9   Wingate's opinion to be partially persuasive and limited plaintiff to simple tasks with additional

10   social limitations as consistent with the mental status examination findings that plaintiff has

11   difficulty concentrating. Tr. 59. The ALJ discounted, however, Dr. Wingate's opinion that

12   plaintiff has marked limitations as inconsistent with plaintiff's testimony that she can usually

13   complete tasks;[1] unsupported by Dr. Wingate's own mental status examination findings of

14   plaintiff being cooperative, talkative, fully oriented, and with normal memory, thought process,

15   and content; unsupported by any narrative description about plaintiff's inability to maintain a

16   work schedule; and inconsistent with the rest of the opinion evidence. *Id.* (citing Tr. 845); *see* Tr.

17   847 (mental status examination).

18        The ALJ cited substantial evidence for discounting Dr. Wingate's opinion based on

19   supportability and inconsistency. With respect to supportability, the ALJ referred to the mental

20   status examination administered by Dr. Wingate and the lack of a narrative explanation for work

21   schedule limitations. Tr. 59. Although the mental status examination noted a mood that

22

23   [1] The ALJ committed a scrivener's error by referring to Exhibit 78F at 4 in support of this
proposition. Tr. 59. The correct citation is 7F at 4, where Dr. Wingate noted: "When not
hypomanic she works slowly, but can usually complete tasks." Tr. 845.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 4

"[s]eemed slightly elevated, hyper," and concentration outside of normal limits, all other aspects were within normal limits. Tr. 847. Dr. Wingate did not indicate how a slightly elevated/hyper mood was translatable into a work limitation, and the ALJ accounted for the concentration limitations within the assessed RFC. Tr. 54, 59. The ALJ accurately noted that Dr. Wingate did not explain in a narrative, non-conclusory fashion how objective findings supported plaintiff's work schedule limitations. Tr. 59; *see, e.g.*, *Stiffler v. O'Malley*, 102 F.4th 1102, 1106–07 (9th Cir. 2024) (discounting physician's conclusions about functional limitations because doctor did not set forth the rationale for those conclusions). This goes to the quality of Dr. Wingate's explanation. 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the ALJ found that Dr. Wingate's reference to marked limitations conflicted with plaintiff's testimony about an ability to complete tasks, as well as with other opinion evidence. Tr. 59 (citing Tr. 845). As discussed *infra*, the ALJ cited substantial evidence for discounting plaintiff's testimony, including plaintiff's own statements regarding the frequency and severity of her symptoms, as well as medical records that showed stability and improvement with medication and treatment. As for other opinion evidence, reviewing psychologists Dr. Michael Brown, Ph.D., and Dr. Renee Eisenhauer, Ph.D., assessed no more than moderate limitations. Tr. 99, 108–110. Dr. Eisenhauer rejected the severity of Dr. Wingate's assessment, noting that "[t]he opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Tr. 106.

Plaintiff contends that the ALJ should have credited Dr. Wingate's acceptance of plaintiff's report of audio and visual hallucinations as evidence of marked limitations, as well as accounted for Dr. Wingate's qualification that plaintiff was unable to complete tasks when hypomanic. Dkt. 17, at 3–7. This alternative interpretation of the record does not undermine the

1  reasonableness ALJ's decision to discount Dr. Wingate's opinion about plaintiff's functional

2  limitations based on lack of supportability and inconsistency with the medical record and

3  plaintiff's testimony. Moreover, plaintiff's position relies upon plaintiff's testimony about the

4  limiting effects of her hallucinations and hypomania/depression that, as discussed below, the

5  ALJ reasonably discounted.

6          The Court finds that plaintiff has not demonstrated that the ALJ's decision to discount

7  Dr. Wingate's opinion was unsupported by substantial evidence or the result of harmful legal

8  error.

9              **b. Dr. Losee**

10         In a February 2022 psychological evaluation, Dr. Losee opined that plaintiff's "ability to

11 complete activities of daily living is affected by decreased motivation and energy during

12 depressive episodes, and difficulty focusing and staying on task when manic"; that although

13 plaintiff showed only moderate impairment during the assessment, "it is likely that she

14 experiences periods of more severely impaired concentration during severe depressive episodes,

15 manic episodes, and with more florid psychotic symptoms" and "this can affect her ability to

16 attend to, remember, and carry out instructions on a sustained basis"; although she could handle

17 adapting to changes in a work setting, plaintiff "would have difficulty tolerating stress"; and

18 plaintiff "would have difficulty attending work consistently during severe depressive episodes."

19 Tr. 867. The ALJ discounted parts of Dr. Losee's opinion because (1) some of the opinion

20 referred to periods of exacerbation of plaintiff's symptoms and not her level of functioning when

21 her symptoms are at her baseline; (2) some of the findings are not consistent or supported by Dr.

22 Losee's own observations at the examination and seem to be a recitation of plaintiff's subjective

23 complaints; (3) while the restriction of plaintiff to simple tasks is supported, there is little support

in the record that plaintiff has experienced a "severe" depressive episode and Dr. Losee did not

quantify how many "severe" depressive episodes plaintiff experienced during the relevant

period; and (4) Dr. Eisenhauer—who opined at most moderate limitations—reviewed Dr.

Losee's opinion and indicated that it was consistent with the objective findings in the record. Tr.

58.

The ALJ cited substantial evidence for discounting Dr. Losee's opinion based on

supportability and inconsistency. In terms of supportability, the ALJ discounted the quality of

Dr. Losee's findings because they referred to periods of exacerbation—severe depressive and

manic episodes—and did not appear to be consistent with the administered mental status

examination, which was generally benign aside from a degree of impaired concentration. Tr. 58;

*see* Tr. 866. "RFC does not represent the *least* an individual can do despite his or her limitations

or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *4. Thus, the ALJ accepted Dr.

Losee's findings to the extent they referred to plaintiff's functioning outside of exacerbated

periods of mania or depression. Although plaintiff contends that the ALJ should have presumed

the severity and frequency of plaintiff's depressive and manic episodes followed her self-reports,

as discussed *infra*, the ALJ set forth specific, clear, and convincing reasons to discount plaintiff's

symptom testimony. For example, records from her December 2020 hospitalization noted that

the manic episode occurred during a period of plaintiff not taking her medications, and that her

last manic episode had occurred about four years prior to medication management. Tr. 56, 419,

423–24; *see, e.g.*, Tr. 641 (January 12, 2021 psychiatric evaluation stating, "[Plaintiff] reports

her first manic episode lasting for one week about 4 years ago"). In terms of consistency, the

ALJ noted that state agency psychological consultant at reconsideration Dr. Eisenhauer had

reviewed Dr. Losee's opinion and found it to be consistent with the objective findings in the

record. Tr. 58. Plaintiff contends that this means that the ALJ did not demonstrate how Dr.

Losee's opinion was *inconsistent* with the record as a whole. Dkt. 17, at 9. Although this is a

possible interpretation, the contention is not consistent with a reasonable reading of the entirety

of the ALJ's decision. The ALJ found Dr. Losee's opinion supportable only to the extent it

referred to current function outside of the exacerbated periods for which there was little support.

Moreover, the ALJ found Dr. Eisenhauer's opinion to be partially persuasive to the extent it was

consistent with the longitudinal medical evidence and the other medical opinions, and within the

context of Dr. Eisenhauer opining no greater than moderate limitations in functioning. Tr. 57,

108–10. The ALJ thus found Dr. Losee's opinion consistent with the objective testimony to the

extent it did not rely upon assertions about the severity and frequency of mental health

limitations supported by discounted subjective testimony.

      The Court finds that plaintiff has not demonstrated that the ALJ's decision to discount

Dr. Losee's opinion was unsupported by substantial evidence or the result of harmful legal error.

## 2. Plaintiff's Testimony

      Plaintiff contends the ALJ failed to give specific, clear, and convincing reasons for

discounting plaintiff's testimony about the impact of her mental limitations on her ability to

sustain work activity. Dkt. 17, at 11–17; *see Lambert v. Saul*, 980 F.2d 1266, 1277 (9th Cir.

2020). The Court finds that plaintiff has not demonstrated that the ALJ erred as a matter of fact

or of law by discounting plaintiff's testimony.

      The ALJ summarized plaintiff's hearing testimony:

> Plaintiff alleged having difficulty staying on task, completing a
> task, and following instructions. She noted having difficulty
> cooking a meal because of having difficulty multi-tasking. The
> claimant testified having trouble shopping for groceries. She also
> alleged experiencing auditory hallucinations three times a week
> and visual hallucinations constantly. The claimant noted that these

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 8

symptoms cause limitations in her ability to focus and concentrate.

At the time of her application date, claimant alleged experiencing limitations in her ability to work due to her PTSD, bipolar disorder, and schizoaffective disorder (Exhibit 2E at 2 [Tr. 313]). She also indicated that she stopped working because of her condition on July 15, 2017 (Exhibit 2E at 2 [Tr. 313]). On appeal, the claimant alleged no worsening of her symptoms or any new impairments that limited her ability to perform daily activities (Exhibits 4E at 2, 6 [Tr. 323, 327]; 6E at 2, 5 [Tr. 334, 337]).

…. She indicated that her medications cause some increase in her mania, lethargy, and dizziness (Exhibit 14E [Tr. 394]).

Tr. 55. The ALJ summarized plaintiff's other record statements as follows:

As for the claimant's symptoms, they support some limitations in her ability to perform basic work activities. The claimant has reported a history of trauma consistent with a PTSD diagnosis (Exhibits 1F at 15 [Tr. 420]; 3F at 15 [Tr. 640]; 7F at 4 [Tr. 845]). She has reported experiencing nightmares, startling easily, having triggers causing panic, and avoiding certain people and places (Exhibit 3F at 16 [Tr. 641]). In terms of her depression and anxiety related symptoms, the claimant indicated being agitated, irritable, and having mood swings (Exhibits 7F at 3 [Tr. 844]); 12F at 2 [Tr. 875]. She also noted having difficulty controlling her emotions and will cause her to "strike out" verbally and then feel bad about her behavior (Exhibit 7F at 3 [Tr. 844]). The claimant also endorsed experiencing difficulty leaving the house, hypervigilance, and startling easily (Exhibit 7F at 4 [Tr. 845]). The claimant has also reported experiencing hallucinations (Exhibit 12F at 2 [Tr. 875]). She has rated the intensity of her symptoms as moderate-to-marked (Exhibit 19F at 4 [Tr. 1100]). Thus, her reported symptoms, including the intensity of her symptoms, support the significant reduction in her ability to perform detailed tasks and interact with others that is set forth in the residual functional capacity above.

Tr. 56. The ALJ discounted plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms as inconsistent with plaintiff's improvement with medication and treatment, her mental status examinations, and her own statements. Tr. 55–57. These are specific, clear, and convincing reasons that could suggest that plaintiff's symptoms might be less severe than stated in her testimony.

First, the ALJ noted that in 2018, i.e., two years before the amended, alleged onset date, plaintiff reported significant mental health symptoms that had heretofore been untreated, and that medical records showed that with medication and treatment plaintiff improved and gained stability. Tr. 55–56 (citing Tr. 449, 478, 1112). At the alleged onset date in June 2020, plaintiff presented to the emergency department due to self-mutilating behavior, but the ALJ noted that plaintiff was not at her baseline due to drug abuse and not taking her medication; nonetheless plaintiff responded well to treatment and reported experiencing mild-to-moderate symptoms without risk of withdrawal. Tr. 55 (citing Tr. 603, 610, 630, 936–39). The record contains one instance of in-patient hospitalization from December 4, 2020 to December 9, 2020, in which plaintiff reported suicidal ideation, hallucinations, worsening depression, paranoia, and thoughts to harm others, as well as exhibiting symptoms of difficulty sleeping, fast speech, elevated affect, mania, angry outbursts with threats, and mood lability. Tr. 56 (citing Tr. 406–594, 667–78). Again, this took place in the context of intermittent medication compliance, Tr. 419, and the ALJ noted that upon discharge she indicated that the intensity of her mental health symptoms was mild-to-moderate in intensity on a 10-point scale and her symptoms were responding well to psychopharmacology management. Tr. 56 (citing Tr. 449, 478). The ALJ noted that while plaintiff had periods of intermittent medication and treatment compliance, she has reported feeling "good" and "stable" while on medication, reported improved mood and sleep while on medication, and appeared medically stable on medications during physical examinations. Tr. 56 (citing Tr. 419, 599, 648, 908).

Second, the ALJ found that although mental status examinations throughout the record supported some limitations in her ability to perform basic work activities, they were more consistent with the assessed RFC restrictions to performing simple tasks without strict

production requirements and limited interaction with others. Tr. 56. The ALJ noted that although plaintiff presented with deficits in mood and affect, she consistently demonstrated at least average intellectual functioning, good attention span and concentration, and no deficits in her memory. Tr. 56 (citing Tr. 411, 636, 644, 881, 884, 887, 890, 892). Although plaintiff reported experiencing paranoia and hallucinations, at those visits she also appeared fully oriented. (Tr. 411, 636, 881, 884).

Third, the ALJ found that plaintiff's own statements appeared to suggest her limitations accorded more closely with the assessed RFC than with her symptom testimony. Tr. 57. The ALJ noted that in December 2020 plaintiff reported applying for jobs, which appeared inconsistent with allegations of being unable to work; plaintiff reported going hiking and taking her son to a pumpkin patch, which appeared consistent with an ability to interact with co-workers on a limited basis and performing simple tasks; and plaintiff referred to a four-year gap between her last manic episode and the one in December 2020, while "[t]here is no evidence of any other manic episodes in the record." Tr. 57 (citing Tr. 419, 628, 884, 893). On the question of the frequency of manic episodes, the Court notes that the ALJ's statement is accurate only to the extent of *recorded* rather than *reported* manic episodes. During her August 2021 evaluation by Dr. Wingate, plaintiff reported having experienced a manic episode six weeks prior, Tr. 445; in her February 2022 evaluation by Dr. Losee, plaintiff reported having experienced a manic episode one month prior, Tr. 865. Nonetheless, the ALJ's broader point about inconsistency regarding the frequency and severity of plaintiff's reports of manic episodes remains. For example, plaintiff told Dr. Losee: "She dated the onset of her manic episodes to high school. In the past, they lasted up to a week. She dated her last manic episode to one month ago." Tr. 865. In doing so, plaintiff did not suggest or acknowledge that her manic episodes ceased between

2016 and 2020; rather her implication was that they continued since high school as a fairly regular occurrence, which would have misled Dr. Losee through the omission of significant facts. On appeal in September 2021, plaintiff did not suggest that her condition had materially worsened since she ceased working in 2017. *See* Tr. 323, 327, 334, 337.

Plaintiff cites *Ferguson v. O'Malley*, 95 F.4th 1194 (2024), for the proposition that the ALJ was required to discuss in greater detail the impact of plaintiff's hallucinations on her capacity to work. This argument is unpersuasive. In *Ferguson*, the ALJ had determined that headaches were a severe impairment and had failed to expressly state how plaintiff's testimony about the severity of her headaches was inconsistent with the medical record. *Id.* at 1200–01. Here, however, the ALJ discussed plaintiff's hallucinations as repeatedly reported symptoms of her severe impairments of bipolar disorder, PTSD, schizoaffective disorder, and borderline personality disorder, and examined them in the context of whether the hallucinations and other mental health symptoms reached a severity that would markedly affect her capacity to work. That is, the ALJ treated plaintiff's hallucinations in the same way as the psychologists who examined her—not as a separate diagnosis but as symptoms of the accepted mental health diagnoses.[2] While it is true that if the ALJ had not adequately discounted plaintiff's testimony about the severity, intensity, and frequency of her hallucinations, the decision would be unsupported by substantial evidence; it is also true that having adequately discounted plaintiff's testimony about the severity, intensity, and frequency of her symptoms related to mental health, the decision is supported by substantial evidence.

---

[2] Plaintiff herself did not refer to hallucinations as a separate impairment but as symptoms of PTSD, bipolar disorder, and schizoaffective disorder. Tr. 313.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 12

The Court finds that plaintiff has not demonstrated that the ALJ's decision to discount plaintiff's symptom testimony was unsupported by substantial evidence or the result of harmful legal error.

### 3. Drug Addiction and Alcohol ("DAA")

Plaintiff argues that the ALJ misused DAA to discount plaintiff's mental health symptoms because if DAA is to be employed, an ALJ must first find that DAA is a severe impairment, engage in the five-step analysis including DAA to find disability, then examine whether a claimant remains disabled without DAA. Dkt. 17, at 17–18; *see* 42 U.S.C. § 1382c(a)(3)(J). This argument is unpersuasive.

Generally, an ALJ only makes a DAA materiality determination when (1) "[w]e have medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder," and (2) "[w]e find that the claimant is disabled considering all impairments, including the DAA." Social Security Ruling ("SSR") 13-2p, 2013 WL 621536, at *4. Here plaintiff herself does not argue that the ALJ should have found that plaintiff has a substance abuse disorder. Her complaint is, instead, that unless a full DAA analysis is engaged in, the ALJ was prohibited from discounting plaintiff's symptom testimony by noting that "claimant was not at her baseline due to drug abuse and not taking her medication," and that "most of the claimant's respiratory symptoms have been attributed to her smoking habit and not due to her asthma." Dkt. 17, at 17 (citing Tr. 52).

Nothing in the record nor in plaintiff's own assertions suggests that during the relevant period plaintiff had a substance use disorder; therefore, the ALJ was not required to engage in a DAA analysis. The ALJ referred to the uncontested fact that plaintiff's hospitalization in December 2020 was related to plaintiff's relapse into drug use that was otherwise in remission in

order to observe that plaintiff was not at her baseline mental condition at the time. "A claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically determinable Substance Use Disorder." SSR 13-2p, 2013 WL 621536, at *3. Moreover, with respect to smoking, no DAA materiality determinations are made with respect to "nicotine-related disorders" and "nicotine dependence." SSR 13-2p, 2013 WL 621536, at *4. The case law does not suggest that an ALJ is prohibited from referring to drug use when discounting symptom testimony unless it is done in the context of a DAA analysis. *See, e.g.*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("In this case, the ALJ discounted Coleman's testimony because she found that Coleman had engaged in drug-seeking behavior."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("Additionally, the ALJ found that Ms. Thomas had not 'been a reliable historian, presenting conflicting information about her drug and alcohol usage.'").

The ALJ did not harmfully err as a matter of fact or law by not engaging in a DAA analysis after noting that plaintiff's mental condition was affected by drug use at the time of an in-patient hospitalization and discounting plaintiff's symptoms regarding asthma in part due to smoking.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of November, 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 14